**UNITED STATES of America, Appellant,**

v.

**Frank J. SANTORO, Appellee.**

**Civil Action No. 2:96CV523.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 11, 1997.

Gregory D. Stefan, U.S. Atty's Office, Norfolk, VA, for U.S.

Jonathan Robert Pond, Ross Campbell Reeves, Willcox & Savage, Norfolk, VA, for Frank J. Santoro.

Debera F. Conlon, Office of U.S. Trustee, Norfolk, VA, U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

### INTRODUCTION

This case comes before the Court on appeal from the bankruptcy court's Memorandum Opinion and Order entered on April 9, 1996. In its order, the bankruptcy court concluded that a fee assessed by the Postal Service ("USPS") for the administrative costs of a pay order was improperly assessed and the USPS was ordered to return the fee to the debtor. The USPS presents three issues to this Court on appeal: (1) whether the bankruptcy court had jurisdiction to hear the motion, assuming the trustee did have standing; (2) whether the trustee has standing to file the motion to prohibit the employer from charging the fee; and (3) whether the USPS had the statutory authority to assess the one time fee. For the reasons that follow, the Court **AFFIRMS** the bankruptcy court's holding that jurisdiction exists and that the USPS fee was improperly assessed.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Philip L. Barnes ("debtor") filed a petition for relief under Chapter 13 on May 16, 1995. Frank J. Santoro ("trustee") was appointed

to serve as trustee. The bankruptcy court entered an order on August 1, 1995 confirming the debtor's Chapter 13 plan. The order directed the debtor's employer, the USPS, to withhold $225.00 per month from the debtor's wages for sixty months and pay that amount to the trustee for distribution to the debtor's creditors. On August 11, 1995, USPS notified the debtor that it would withdraw from the debtor's wages an additional $50.00 to defray the administrative costs of compliance with the order pursuant to 5 U.S.C. § 5520a, which provides that the administrative costs in executing a garnishment action may be added to the garnishment.

On September 1, 1995, the trustee filed a motion to prohibit the USPS from charging the fee. On April 9, 1996, the bankruptcy court entered its Memorandum Opinion and Order in favor of the trustee. The bankruptcy court held that the USPS could not charge the one-time administrative fee. The USPS appealed that decision to this Court.

## II. STANDARD OF APPELLATE REVIEW

All issues in the matter before this Court concern questions of law. A district court reviews a bankruptcy court's decisions of law *de novo*. *L & R Associates v. Curtis*, 194 B.R. 407, 409 (E.D.Va.1996) *citing In re Johnson*, 960 F.2d 396, 399 (4th Cir.1992).

## III. DISCUSSION

**A. Whether the bankruptcy court had jurisdiction to hear the motion, assuming the trustee did have standing.**

The USPS argues that the bankruptcy court did not have statutory jurisdiction to hear the trustee's motion. District courts are granted original, but not exclusive, jurisdiction over all civil proceedings (1) "arising under" Title 11, (2) "arising in" cases under Title 11, or (3) "related to" cases under Title 11, 28 U.S.C. § 1334(b). Section 157 permits district courts to refer any or all of such matters to their respective bankruptcy courts. 28 U.S.C. § 157(a). However, a bankruptcy court may only "determine" (1)

cases under Title 11, (2) "core proceedings arising under" Title 11, or (3) core proceedings "arising in" a case under Title 11. 28 U.S.C. § 157(b)(1). For proceedings "related to" a case under Title 11, the bankruptcy court may only enter proposed findings of fact and conclusions of law unless all parties to the proceeding have consented to a bankruptcy court determination.[1]

The trustee argues, and the bankruptcy court agreed, that the present dispute is a "core" proceeding specifically enumerated under 28 U.S.C. § 157(b)(2)(A). Section 157(b)(2) enumerates specific examples of "core proceedings," among which are "matters concerning the administration of the estate." The trustee argues that the administration of the bankrupt estate is essentially equivalent to administering the payments under the debtor's plan and that if a charge assessed against the payments under the plan could have an effect on the debtor's ability to make such payments, then the charge concerns "the administration of the estate."

■ The USPS argues that the fee did not affect the debtor's ability to perform under the plan because the administrative fee did not reduce the amount paid to the trustee, the fee was collected from debtor's post-petition wages not property of the estate, and the fee was a post-petition and post-confirmation claim against the debtor. While the fee did not, in fact, affect the administration of the estate in the manner alleged by the trustee at the stage in the proceedings when the motion was made, the Court finds that the fee still concerned the administration of the estate. The debt owed to the USPS for administering the pay order arose at the same time the confirmation order was entered. The fact that it was applied post-confirmation does not change its nature as a cost that could have been contemplated by the trustee at the time the bankruptcy plan was formulated. If the trustee had known the USPS fee would be charged, and that the fee itself was legitimate, he very likely would have taken it into account especially in a plan

---

1. If this case falls under "related to" jurisdiction, both parties have agreed that their consent to a bankruptcy court determination has been implied.

that required all of the debtor's disposable income to be put in the trust. Additionally, the USPS claims that it must charge the fee in order to cover the costs of administering the pay order—a critical aspect of the estate. Without the cooperation of the USPS, it would be impossible to administer the estate in the manner prescribed by the confirmation order.

■ The statement that the USPS fee arose post-confirmation is not entirely correct. The fact that the fee was *charged* against the debtor's wages post-confirmation does not necessarily indicate that it *arose* post-confirmation. If the USPS fee is found to be legitimate, then the right to charge the fee arose at the time the confirmation order was entered, and it is clearly a matter that affects the administration of the estate even though it did not detrimentally affect the debtor's ability to pay under the plan.

To argue that an administrative fee, charged by the employer who provides the funds to the trust, is not a matter concerning "the administration of the estate," is to draw unnecessarily fine lines in bankruptcy court jurisdiction. Such a narrow interpretation contradicts Congressional intent in that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp., v. Edwards*, 514 U.S. 300, 308, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 *citing Pacor, Inc. v. Higgins*, 743 F.2d 984 (1984) and H.REP. No. 95–595, pp. 43–48 (1977). Thus, this Court finds that the bankruptcy court had jurisdiction to hear the motion.

**B. Whether the trustee has standing to file the motion to prohibit the employer from charging the fee.**

■ The second issue presented in this matter is interwoven with, yet distinct from, the question of bankruptcy court jurisdiction. Whether the Chapter 13 trustee had standing to bring the motion to prohibit the em-

ployer from charging the fee is a necessary prerequisite to bankruptcy court jurisdiction, in addition to the statutory analysis discussed above.[2] The requirement of standing is both a "constitutional limitation[ ] on federal court jurisdiction and [a] prudential limitation [ ] on its exercise." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 363–64 (1992). The jurisdiction of federal courts is restricted "to actual controversies in which the litigants have a personal stake." *FedPak*, 80 F.3d at 211 (citing U.S. Const. Art. III. § 2; *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir.1994)). "A bankruptcy court, like any other federal court, lacks the constitutional power to render advisory opinions or to decide 'abstract, academic, or hypothetical questions.'" *FedPak*, at 211–212 citing *In re Inn on the Bay, Ltd.*, 154 B.R. 364, 367 (Bankr.S.D.Fla.1993). Thus, the standing of the trustee depends upon whether he has a "personal stake" or "injury in fact."

The trustee argues that he has the statutory authority to bring this motion under 11 U.S.C. § 1 302(b)(4) and (b)(5):[3]

(b) The trustee shall–

(4) advise, other than on legal matters, and assist the debtor in performance under the plan; and

(5) ensure that the debtor commences making timely payments under section 1326 of this title.

In cases where the standing of a trustee has been challenged, the courts have looked to see if the actions of the trustee are encompassed within the trustee's statutory powers or are closely related to the trustee's statutory powers. *In re Maddox*, 15 F.3d 1347, 1353–56 (5th Cir.1994) (finding that a Chapter 13 trustee had standing in certain instances where as a result of bringing an adversary action, the trustee could potentially bring more assets into the estate and consequently increase payments available to unsecured creditors).

---

**2.** One other district court has decided this precise issue and it ruled that the trustee did not have standing to bring such an action. *See In re Heath*, 198 B.R. 298 (S.D.Ind.1996).

**3.** The trustee does not assert that he has been injured but relies on statutory authority as the sole source of his standing.

In this case, the trustee reasons that the payment of the fee can affect the debtor's ability to commence and continue payments under the plan and the trustee has a responsibility to assist the debtor in performance under the plan pursuant to § 1302(b)(4). Although the bankruptcy judge stated, "In Chapter 13 cases there is rarely much of a 'margin for error' as to the debtor's finances and any type of additional fee such as the one in this instance serves as a threat to the success of the Chapter 13 plan," the fifty dollar fee did not have any effect on the trust from which the debtor's creditors are being paid. After the fee was imposed, the trustee still received all the funds to which he was entitled under the plan. Thus, the argument that standing existed pursuant to 11 U.S.C. § 1302(b)(4) and (b)(5) based on the possibility that the $50 fee would detrimentally affect the debtor's ability to pay under the plan is insufficient.

▆▆▆▆ Although the fee did not affect the administration of the estate in the manner argued by the trustee, this Court finds that the fee did concern the duty of the trustee to ensure that the debtor commences making timely payments under the plan pursuant to § 1302(b)(5). Ensuring that the debtor commences making timely payments encompasses more than just the ability of the debtor to pay. It encompasses the administration of the estate. In this case, the bankruptcy court ordered that the estate would be administered by requiring the debtor's employer to submit $225.00 of each paycheck to the estate and then the trustee would use the assets of the estate to pay the creditors. Whether the employer complies with this order and the manner through which he complies, are central components of how the debtor begins and continues to make timely payments under § 1326. Accordingly, the trustee has the statutory authority to bring a motion challenging the fee's legitimacy pursuant to 11 U.S.C. § 1302(b)(5) because the legitimacy of the fee is a matter that concerns the duties of the trustee.

## C. Whether the USPS had the statutory authority to assess the one time fee.

The issue presented to this court involves whether the administrative fee imposed by USPS was authorized by 15 U.S.C. § 5520a. The statute authorizes federal government agencies to honor garnishment orders to collect debts of employees of federal agencies. At the time the fee was imposed, it provided in relevant part:

(a)(3) "legal process" means any writ, order, summons, or similar process in the nature of garnishment, that–

(A) is issued by a court of competent jurisdiction within any State, territory or possession of the United States . . .; and

(B) orders the employing agency of such employee to withhold an amount from the pay of such employee, and make a payment of such withholding to another person, for a specifically described satisfaction of a legal debt of the employee, or recovery of attorney's fees, interest, or court costs; and

. . . .

(b) Subject to the provisions of this section and the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. § 1673) pay from an agency to an employee is subject to legal process in the same manner and to the same extent as if the agency were a private person.

. . . .

(j)(2) Such regulations shall provide that an agency's administrative costs in executing a garnishment action may be added to the garnishment, and that the agency may retain costs recovered as offsetting collections.

15 U.S.C. § 5520a. The plain language of the statute did not indicate whether it extends to Chapter 13 pay orders. Thus, determining whether such bankruptcy orders are covered by the statute requires further analysis.

The trustee argues that the Bankruptcy Reform Act of 1978 created a waiver of sovereign immunity to permit enforcement of Chapter 13 pay orders. Under Chapter 13, a court can direct pay orders to any "entity" from whom the debtor receives income, including agencies of the United States. 11 U.S.C. § 1325(c) (1988). Congress defined "entity" to include a "governmental unit,"

which includes the "United States" and any "department, agency, or instrumentality of the United States." 11 U.S.C. § 101(15) and § 101(27).

Prior to the enactment of 5 U.S.C. § 5520a, federal agencies were immune from state and local garnishment orders. *See* S.REP. No. 57, 103d Cong., 1st Sess. 6 (1993), reprinted in 1993 U.S.C.C.A.N. 1802, 1807. However, sovereign immunity against Chapter 13 pay orders was waived prior to the enactment of 5 U.S.C. § 5520a.[4] The trustee argues that the intent behind § 5520a was not to subject agencies to Chapter 13 pay orders but to "make federal employees subject to garnishment under applicable state law to the same extent as other employees." S.REP. No. 57 at 6. Thus, he argues, it must have been the intent of Congress to deal with "legal process" other than bankruptcy court pay orders in 5 U.S.C. § 5520a because such pay orders were already permitted against government agencies. In support of this contention, the trustee stated that in the legislative history of the Act, all examples of garnishment actions against the government were based in state law.

The trustee also presents the argument that the fee is illegitimate because only "garnishments" are included in the provision allowing administrative expenses. Even if the statute broadly covers all forms of legal process including the bankruptcy order, the authority to charge an administrative fee was only extended to process in the nature of garnishment. He argues that if the Congress had intended to allow agencies to charge fees for the administrative fees incurred by complying with all "legal process" they would not have so narrowly defined the nature of which legal processes ("garnishment") could be subject to the fee.

As the bankruptcy court concluded, garnishments have several characteristics which differentiate them from Chapter 13 wage withholding orders. Garnishments are of limited duration and are available only to a judgment creditor and therefore relate to a specific debt of the debtor whereas a Chapter 13 wage withholding order is part of a bankruptcy plan that is designed to discharge different debts of the debtor. A bankruptcy court wage withholding order is also unlike a garnishment in that the bankruptcy order does not result in personal liability on the part of the employer, although compliance may be compelled by the Court. Additionally, the bankruptcy order is a voluntary procedure that the debtor may terminate in several ways.

Although neither party addresses the February 10, 1996 amendment of the statute, it is worthwhile to note. The statute was amended to read:

(j)(2) Such regulations shall provide that an agency's administrative costs incurred in executing legal process to which the agency is subject under this section shall be deducted from the amount withheld from the pay of the employee concerned pursuant to the legal process.

5 U.S.C. § 5520a(j)(2) (1996). Thus, while the administrative expense provision now extends to "legal process" instead of being limited to "garnishments," the change in the statute reflects that a distinction between garnishments and legal process existed at the time the administrative fee was imposed by USPS. Therefore, the court concludes that a Chapter 13 pay order directing the debtor's employer to withhold the amount of the monthly plan payments from the debtor's pay was not in the nature of a garnishment and was not subject to the administrative fee authorized by the version of 5 U.S.C. § 5520a(j)(2) as it was written at the time the fee was imposed.[5]

## IV. CONCLUSION

Based on the foregoing, the decision of the bankruptcy court to grant the motion to prohibit employer from charging fee is **AFFIRMED**. The Postal Service is hereby

---

4. Additionally, USPS was given the power "to sue and be sued," 39 U.S.C. § 401(1), which required it to comply with garnishment orders, prior to both 5 U.S.C. § 5520a and 11 U.S.C. § 1325(c).

5. The Court does not express a view on the legality of imposing a similar fee pursuant to the amended version of 5 U.S.C. § 5520a(j)(2).

DIRECTED to forthwith remit the $50.00 administrative fee to the debtor.

The clerk is DIRECTED to send a copy of this order to counsel for the plaintiff and counsel for the defendant.

IT IS SO ORDERED.