**In re Curtis R. HUDSON, Debtor.**

**Curtis R. HUDSON, Plaintiff,**

**v.**

**UNITED STATES POSTAL SERVICE, Defendant.**

**Bankruptcy No. 95–32784whb. Adversary No. 97–0466.**

United States Bankruptcy Court, W.D. Tennessee.

Dec. 22, 1997.

Hollis Williams, Darrell Castle and Associates, Memphis, TN, for Plaintiff.

William W. Siler, Assistant United States Attorney, Memphis, TN, for United States Postal Service.

George Stevenson, Memphis, TN, Chapter 13 Trustee.

## MEMORANDUM OPINION GRANTING DEBTOR'S COMPLAINT

WILLIAM H. BROWN, Bankruptcy Judge.

This is a chapter 13 case, in which the debtor filed this adversary proceeding seeking injunctive relief against the United States Postal Service and seeking recovery of the two $50 fees charged by the Postal Service for the administrative costs of processing this court's wage deduction orders. The debtor also asks for his attorney's fees. The parties have stipulated that there is no dispute of facts and that this proceeding should be submitted to the court on the issues of law presented. Briefs have been filed, and the court enters this memorandum opinion and its accompanying order pursuant to FED. R.BANKR.P. 7052.

■ This is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A), as the charging of fees for processing income deduction orders in chapter 13 cases affects the administration of the bankruptcy estate. *United States v. Santoro,* 208 B.R. 645 (E.D.Va.1997). Section 1325(c) of the Bankruptcy Code authorizes such orders: "After confirmation of a plan, the court may order any entity from whom the debtor receives income to pay all or any part of such income to the trustee." The principal issue presented in this proceeding is whether the administrative fee charged by the Postal Service under its statutory authority to levy such fees for garnishments may apply to chapter 13 income deduction orders. In other words, is such an income deduction order a "garnishment?" There also are other issues of standing, violation of the automatic stay, and property of the estate that will be addressed.

While this is a matter of first impression before this court, I do not write on a clean slate in that other courts have addressed the

issues and have arrived at conflicting views. In *Black v. United States Postal Service (In re Heath)*, 115 F.3d 521 (7th Cir.1997), for example, that Court held that the bankruptcy court lacked "related to" jurisdiction to consider a similar adversary proceeding brought by the chapter 13 trustee to recover the same $50 administrative fee. This court respectfully will disagree with the Seventh Circuit's opinion. In *United States v. Santoro*, the district court held that the bankruptcy court had subject matter jurisdiction to hear the trustee's challenge to the Postal Service's administrative charge and further held that the governmental employer did not have authority to assess the fee in that chapter 13 case. This court will agree with the *Santoro* Court's ultimate conclusion, as well as that Court's reasoning that the determination of the validity of such administrative fees is a core proceeding.

■ It should first be noted that the present case differs from the Seventh Circuit's case in that there the chapter 13 trustee filed the adversary proceeding. Here, the debtor filed the complaint, but the parties consented to an amendment to add the chapter 13 trustee as a co-plaintiff. See FED. R.BANKR.P. 7020. Either the trustee or the debtor, and perhaps both, have standing to bring this action. As the *Santoro* Court observed, the legitimacy of the Postal Service's administrative fee is a matter that concerns the trustee's duty to "ensure that the debtor commences making timely payments under section 1326 of this title." 11 U.S.C. § 1302(b)(4) and (5); *U.S. v. Santoro*, 208 B.R. at 649. This duty "encompasses the administration of the estate." *U.S. v. Santoro*, 208 B.R. at 649. The chapter 13 debtor, of course, has a duty to make plan payments both before and after confirma-

tion. 11 U.S.C. § 1326. Moreover, property of a chapter 13 bankruptcy estate includes, in addition to the general descriptions found in § 541, property "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted," as well as "earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1306(a)(1) and (2). The latter is true even though the debtor "shall remain in possession of all property of the estate," except as provided in the confirmed plan. 11 U.S.C. § 1306(b).

In this particular case, as was true in all chapter 13 cases in this district at the time of the plan's confirmation, the order of confirmation provided: "All property acquired and all earnings from services performed by the debtor(s) after the commencement of the case shall continue to be property of the estate."[1] Therefore, the debtor's post-confirmation earnings subject to the $50 fees are property of the estate.

■ This Court is in agreement with the *Santoro* Court in that income deduction pursuant to 11 U.S.C. § 1325(c) is not a "garnishment" under 5 U.S.C. § 5520a.[2] The relevant portions of that statute provide as follows:

§ 5520a. Garnishment of pay

(a)(3) "legal process" means any writ, order, summons, or other similar process in the nature of garnishment that

(A) is issued by a court of competent jurisdiction within any State, territory, or possession of the United States, or an authorized official pursuant to an order of such a court or pursuant to State or local law; and

---

1. The judges of this judicial district recently, and subsequently to confirmation of this plan, have altered the language of the chapter 13 confirmation orders to provide the following language: "All property shall remain property of the Chapter 13 estate under §§ 541(a) and 1306(a) and shall revest in the debtor(s) only upon discharge pursuant to § 1328(a), dismissal of the case, or specific order of the court. The debtor(s) shall remain in possession of and in control of all property of the estate not transferred to the trustee, and shall be responsible for the protection and preservation of all such property, pending

further orders of the court." The confirmation language in either instance differs from that found in the *Heath* opinion, where post-confirmation income remained property of the estate only "to the extent necessary to fulfill the plan." 115 F.3d at 523.

2. Although 5 U.S.C. § 5520a(j)(2) was amended subsequent to the version of the statute discussed in the *Santoro* opinion, this court concludes that the amended statute leads to the identical result.

(B) orders the employing agency of such employee to withhold an amount from the pay of such employee, and make a payment of such withholding to another person, for a specifically described satisfaction of a legal debt of the employee, or recovery of attorney's fees, interest, or court costs. . . .

The statute further provides for promulgation of implemental regulations:

(j)(2) Such regulations shall provide that an agency's administrative costs incurred in executing legal process to which the agency is subject under this section shall be deducted from the amount withheld from the pay of the employee concerned pursuant to the legal process.

This court concludes that whatever "legal process" is contemplated by § 5520a(a)(3) must be "in the nature of garnishment" in order for this section to apply. Under the "plain language of the statute," it is not indicated "whether it extends to Chapter 13 pay orders. Thus, determining whether such bankruptcy orders are covered by the statute requires further analysis." *U.S. v. Santoro,* 208 B.R. at 649. The *Santoro* Court observed that § 5520a(j)(2) of the statute in effect at the time of its income deduction order referred solely to "an agency's administrative costs in executing a garnishment action;" whereas, the statute as now amended refers to "administrative costs incurred in executing legal process." 208 B.R. at 650. That Court expressed no "view on the legality of imposing a similar fee pursuant to the amended version of 5 U.S.C. § 5520a(j)(2)," while holding that the prior version of the statute did not permit the fee to be charged for anything other than a garnishment. *Id.* at n. 5. Notwithstanding the amendment to § 5520a(j)(2), it still relies upon subpart (a)(3)'s definition of "legal process" as something "in the nature of garnishment."

■ There are numerous reasons why an income deduction in chapter 13 is not a "garnishment," for purposes of § 5520a. Simply put, an income deduction order under Bankruptcy Code § 1325(c) is not a garnishment or legal process utilized to collect a debt of a federal employee. Chapter 13 is a voluntary process initiated by the debtor, whereas a garnishment order in not voluntary and is initiated by the creditor. While the bankruptcy debtor may voluntarily dismiss a chapter 13 case that has not been previously converted at any time under Code § 1307(b), one subject to garnishment cannot dismiss an involuntary garnishment order. "A bankruptcy court wage withholding order is also unlike a garnishment in that the bankruptcy order does not result in personal liability on the part of the employer, although compliance may be compelled by the Court." *U.S. v. Santoro,* 208 B.R. at 650. Furthermore, garnishment relates to a specific judgment creditor's efforts to collect a specific debt. Chapter 13 income withholding is part of a bankruptcy plan designed to restructure the various debts of the debtor, with the debtor's plan payments flowing through the chapter 13 trustee, who makes disbursements to the creditors in the priority established by the Bankruptcy Code and the particular confirmed plan. If an individual is subject to a garnishment order, the money that is taken directly from the individual's wages is based upon a statutory mathematical formula and that individual does not have a choice as to the amount or method of payment. In contrast, the amount of chapter 13 plan payments is established in part under § 1325's requirements for plan confirmation.

The latter section includes a comparison between the proposed plan payments and the amount that the unsecured creditors would receive in a chapter 7 liquidation; the necessity for proper treatment of secured claims; the commitment of all disposable income, if demanded by unsecured creditors or the trustee; and feasibility of the plan. 11 U.S.C. § 1325(a)(4), (5), (6), and (b). Feasibility includes a requirement that the debtor be able to make the plan payments, not only at the time of confirmation but over the anticipated life of the plan. Income deduction orders play a major role in determining the feasibility factor under § 1325(a)(6), and it is this court's experience that the success of chapter 13 plans is much higher when there are income deductions as opposed to direct payments from the debtor to the trustee. To the extent that the language of *In re Heath,* 115 F.3d at 523, suggests that only children and mentally incompetents use

§ 1325(c) income deduction orders, it is unfortunate. Many debtors file chapter 13 in good faith and commit their total disposable income to plan payments in order to maintain a residence and essential personal property for themselves and dependents. Such debtors often exceed the creditors' and the court's expectations and pay substantial percentages to their unsecured creditors. Merely because the success of such plans is aided by income deduction orders as a disciplined method for payment does not render those debtors incompetent. The reality is that $50 may be a significant amount to a chapter 13 debtor who has committed all disposable income to plan payments. The taking of an additional $50 from an already marginal family budget may cause the debtor to decide that she cannot afford to remain in chapter 13. Subject matter jurisdiction, of course, is evaluated in each case, and in this particular one the debtor has joined in the complaint for recovery of the administrative fees.

After an analysis of the requirements for plan confirmation, it is obvious that the continued success of plan payments depends upon the debtor's post-confirmation income being property of the bankruptcy estate, at least to the extent required to make plan payments and maintain the feasibility of those payments. The confirmation order in this case requires post-confirmation income to continue to be available as property of the estate even though that property may remain in the actual possession of the debtor. The Postal Service's deduction of the $50 administrative fees on two occasions resulted in unauthorized deductions from property of the bankruptcy estate. The deductions were unauthorized because the automatic stay continues to protect property of the estate until it "is no longer property of the estate." 11 U.S.C. § 362(c)(1). There is no record of the Postal Service moving for relief from the automatic stay in this case. The deduction of the two administrative fees, therefore, was in violation of the automatic stay. The court does not, however, find the violations to be willful, as the Postal Service had a reasonable basis to believe that it could deduct the administrative fees. The court will order a return of the administrative fees to the debtor; however, the court, having found that the automatic stay violations were not willful, will not allow attorney's fees to the debtor under 11 U.S.C. § 362(h). The court does commend debtor's counsel for diligently pursuing this proceeding on behalf of the debtor.

### CONCLUSION

By collecting the $50 fee on two occasions from the debtor's post-confirmation earnings, the United States Postal Service has taken property of the bankruptcy estate in violation of the automatic stay. These funds must be returned to the debtor. No award of attorney's fees will be made. The court will deny the debtor's request for a permanent injunction against the Postal Service making similar future deductions. If the court's separate order becomes final, the Postal Service effectively will be on notice that it is not permitted to make such deductions in chapter 13 cases before this court, at least without a prior motion and order granting appropriate relief from the automatic stay.[3]

---

**3.** There may be an appropriate case where relief would be granted to allow the Postal Service to make a deduction for its administrative costs, for example where a particular debtor's income was sufficient to make not only plan payments, to satisfy on-going personal and dependent support obligations, and still to afford the administrative costs. In such a motion, however, it may be necessary for the Postal Service to prove what its administrative costs actually are.