**UNITED STATES POSTAL SERVICE, Appellant,**

v.

**Curtis R. HUDSON and George W. Emerson, as Trustee, Appellees.**

**No. 98–2139–TUV.**

United States District Court, W.D. Tennessee, Western Division.

Feb. 25, 1999.

William W. Siler, U.S. Attorney's Office, Memphis, TN, for United States Postal Service.

M. Hollis Williams, Law Office of Darrell Castle, Memphis, TN, for Curtis Ray Hudson.

David J. Harris, Burch Porter & Johnson, Memphis, TN, for George W. Emerson, Jr.

George W. Emerson, Jr., Memphis, TN, pro se.

ORDER ON BANKRUPTCY APPEAL

TURNER, District Judge.

This is an appeal from a bankruptcy court order finding that the United States Postal Service may not charge a fifty dollar fee for processing the bankruptcy court's payroll orders. *Hudson v. United States Postal Service (In re Hudson)*, 216 B.R. 244 (Bankr. W.D.Tenn.1997). The payroll orders directed the Postal Service to withhold money from an employee-debtor's wages and to remit the withheld amount to a bankruptcy trustee in compliance with the employee's Chapter 13 bankruptcy plan.

I. *Standard of Review*

A district court reviews the bankruptcy court's conclusions of law de novo. *Wesban-*

co *Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Services, Inc.),* 106 F.3d 1255, 1259 (6th Cir.) (citing Bankruptcy Rule 8013), *cert. denied,* —— U.S. ——, 118 S.Ct. 65, 139 L.Ed.2d 27 (1997).

## II. *Background*

The parties have stipulated to the following facts. On November 20, 1995, Curtis Hudson filed a Chapter 13 bankruptcy petition. Under the bankruptcy plan, a portion of Hudson's future wages would be paid to the plan trustee, George Emerson, who would then make distributions to Hudson's creditors. The order confirming the plan provided that "[a]ll property acquired and all earnings from services performed by the debtor(s) after the commencement of the case shall continue to be property of the estate."

At all times relevant to this proceeding, Hudson was employed by the United States Postal Service. On November 21, 1995, the bankruptcy court issued an order directing the Postal Service to withhold a portion of Hudson's wages and to remit the withheld portion to Emerson. By letter dated November 30, 1995, the Postal Service advised Hudson that it would comply with the bankruptcy court's order, but also that there would be a one-time fifty dollar fee, offset against his wages to defray the Postal Service's administrative costs in processing the bankruptcy court's order. The Postal Service then processed the bankruptcy court's order, and withheld fifty dollars from Hudson's wages.

On March 17, 1997, the bankruptcy court issued a second payroll deduction order adjusting the amount to be withheld from Hudson's wages. By letter dated April 2, 1997, the Postal Service again informed Hudson that the order would be complied with but that there would be a one-time fifty dollar processing fee to be paid through a payroll deduction.

On May 1, 1997, Hudson filed an adversary proceeding against the Postal Service, seeking to enjoin the Postal Service's practice of charging a fifty dollar fee for processing payroll deduction orders and seeking reimbursement of the two fifty dollar fees already paid.[1] The bankruptcy court held that the Postal Service was without legal authority to collect the fees, and that collection of the fees violated the automatic stay against appropriating property of the bankruptcy estate mandated by 11 U.S.C. § 362. *Hudson,* 216 B.R. at 247–48.

## III. *Analysis*

The parties contest whether 5 U.S.C. § 5520a(j)(2) authorizes the Postal Service to collect a fee for the administrative cost of complying with bankruptcy court orders directing the Postal Service to deduct and send a portion of Hudson's wages to the Chapter 13 bankruptcy trustee.[2] The court need not reach this issue.

 The filing of a Chapter 13 petition gives rise to an automatic stay, applicable to all entities, against "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).[3] Unless a party in interest asks for relief from the automatic stay, it continues to stay actions against property of the estate until such property is no longer property of the estate. 11 U.S.C. § 362(c)(1). The bankruptcy court found that the Postal

---

1. The parties consented to add the trustee as a co-plaintiff.

2. The first fifty dollar fee was withheld November 30, 1995, when 5 U.S.C. § 5520a(j)(2) read "regulations shall provide that an agency's administrative costs in executing a garnishment action may be added to the garnishment, and that the agency may retain costs recovered as offsetting collections." The second fifty dollar fee was withheld April 2, 1997, when 5 U.S.C. § 5520a(j)(2) read "regulations shall provide that an agency's administrative costs incurred in executing legal process to which the agency is subject under this section shall be deducted from the

amount withheld from the pay of the employee concerned pursuant to the legal process." Effective November 18, 1997, 5 U.S.C. § 5520a(j)(2) was again amended to read as it did at the time of the first withholding. The regulations are implemented at 39 C.F.R. § 491. The parties dispute whether the bankruptcy court's orders were a garnishment or in the nature of a garnishment, as the term "legal process" is defined in the statute.

3. Section 362(b) sets forth several exceptions to the automatic stay, none of which are applicable to these payroll deductions.

Service never requested relief from the automatic stay, and there is no evidence before this court to find otherwise. Thus, any attempt by the Postal Service to exercise control over property of the estate is void as being in violation of the automatic stay.

The parties dispute whether the money withheld from Hudson's wages was property of the estate, to which the automatic stay would apply. The Postal Service contends that the automatic stay was not violated because it was required to collect the fees under 5 U.S.C. § 5520a(j)(2), and that Hudson was therefore not entitled to the money. Without citing any authority, the Postal Service then argues that since Hudson was not entitled to receive the money collected as fees, it was not property of the bankruptcy estate, making 11 U.S.C. § 362 inapplicable.

Under Chapter 13, property of the bankruptcy estate includes "earnings from services performed by the debtor after commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1306(a)(2).[4] The court finds that the fifty dollar fees deducted from Hudson's wages represent "earnings from services performed by the debtor," and were therefore property of the bankruptcy estate. Hence, exercising control over those earnings violated the automatic stay.[5]

■ "Earnings" has been defined as "something (as wages or dividends) earned

as compensation for labor or the use of capital." *Webster's Third New International Dictionary*, 714 (3d ed.1986). On the other hand, "earnings" has also been defined as "the balance of revenue for a specific period that remains after deducting related costs and expenses incurred." *Id.* The Postal Service argues that the latter definition should apply, and more specifically that "earnings" should be defined as the net sum that an employee is legally entitled to receive from his or her employer. The court disagrees. The Postal Service's definition is too broad, as it would subject a Chapter 13 debtor's earnings to not only the type of statutory deductions at issue here, but to other legal claims, such as garnishment actions. It is well settled, however, that garnishment actions violate the automatic stay. *See, e.g., Mack v. Pennsylvania Dep't of Public Welfare (In re Mack)*, 46 B.R. 652, 656 (Bkrtcy. E.D.Pa.1985); *Elder v. City of Thomasville (In re Elder)*, 12 B.R. 491 (Bankr.M.D.Ga. 1981).

■ The court also considered a definition of "earnings" as net earnings after statutory deductions.[6] Courts, however, should not impose artificial constructions where a plain meaning of a statute is available, absent some evidence of congressional intent that the contrived reading is appropriate. The court did not find any evidence of a legislative intent to define "earnings" as gross

---

4. 11 U.S.C. § 1327(b) provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of the a plan vests all of the property of the estate in the debtor." The bankruptcy court's order confirming the plan expressly provided that all earnings from services performed by Hudson after the commencement of the case were to remain property of the estate. Thus, 11 U.S.C. § 1327(b) did not operate to remove post-commencement earnings from property of the estate.

5. Alternatively, if the court were to find that the fifty dollar fees were never a part of the bankruptcy estate, the bankruptcy court would appear to have been without subject matter jurisdiction to hear this claim. It would no longer be a "core proceeding" over which the bankruptcy court would have jurisdiction pursuant to 28 U.S.C. § 157(b). Nor would it appear to be an issue that is "otherwise related" to the bankruptcy proceeding over which the bankruptcy court might take limited jurisdiction to issue proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1). *See United States Post-*

*al Service v. Black (In re Heath)*, 198 B.R. 298 (S.D.Ind.1996), *aff'd*, 115 F.3d 521 (7th Cir. 1997). *But see United States v. Santoro*, 208 B.R. 645, 647–48 (E.D.Va.1997) (finding similar action was a core proceeding, but not addressing whether the fees were property of the estate).

6. The court did so largely out of concern that to do otherwise might result in subjecting other forms of statutory withholding, such as FICA, to the automatic stay. The court's concern proved largely unfounded. Federal Rule of Bankruptcy Procedure 9009 provides that the official forms prescribed by the Judicial Conference of the United States shall be used when filing for bankruptcy. Official Form 6, Schedule I calculates the amount a debtor could contribute to a Chapter 13 plan by subtracting payroll taxes, social security, insurance and union dues from the debtor's gross wages. Thus, these deductions are provided for in Chapter 13 plans. While Schedule I allows a debtor to specify other forms of payroll deductions, there is nothing to suggest that the processing fees charged by the Postal

wages less only statutory deductions. There is nothing in the text of the statute, the legislative history behind it, or other provisions of the Bankruptcy Code to suggest Congress intended such a definition. Accordingly, the court finds that "earnings" should be defined as "gross earnings."

■ Given this definition, Hudson's gross earnings constituted property of the bankruptcy estate under 11 U.S.C. § 1306(a)(2) and were therefore subject to the automatic stay under 11 U.S.C. § 362.[7]

■ Accordingly, the bankruptcy court's finding that the Postal Service's withholding of the fifty dollar fees violated the automatic stay is affirmed.

Service are in the nature of a payroll deduction contemplated by the form; nor was the Postal Service's processing fee specified in Hudson's Schedule I.

7. The fact that the Postal Service may have been legally entitled to the processing fee under 5 U.S.C. § 5520a(j)(2) does not remove it from the estate under 11 U.S.C. § 1306 or from the operation of the automatic stay under 11 U.S.C. § 362. Although a post-petition creditor may seek satis-

faction from post-petition property, it may not seek satisfaction from property of the estate without seeking relief from the stay. *See In re Leavell*, 190 B.R. 536, 538 (Bankr.E.D.Va.1995); *Matravers v. United States (In re Matravers)*, 149 B.R. 204, 205–08 (Bankr.D.Utah 1993); *American Gen. Fin., Inc. v. McKnight (In re McKnight)*, 136 B.R. 891, 893 (Bankr.S.D.Ga.1992); *In re Petruccelli*, 113 B.R. 5, 6 (Bankr.S.D.Cal.1990).