In re JUNG BEA HAN, Debtor.

Jung Bea Han, Plaintiff,

v.

GE Capital Small Business Finance
Corporation, Defendant.

Bankruptcy No. 00–42086.
Adversary No. 05–03012.

United States Bankruptcy Court,
N.D. Florida.

Sept. 26, 2005.

See also 2005 WL 2456933.

ment of GE Capital Small Business Finance Corporation as to Count III of the complaint. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § § 157 and 1334 and the Order of Reference of the District Court. This motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the Court has the authority to enter a final order. For the reasons indicated below, the Court is granting in part and denying in part defendant's supplemental motion for summary judgment and awarding a judgment to plaintiff in the amount of $400 in actual damages and $2,000 in punitive damages pursuant to 11 U.S.C. § 362(h).

Jung Bea Han, Plaintiff, Milton, FL, pro se.

Daniel S. Mandel, for Defendant, Mandel, Weisman, Heimberg & Brodie, P.A., Boca Raton, FL, for defendant.

**ORDER AND JUDGMENT GRANTING IN PART AND DENYING IN PART DEFENDANT'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGEMENT AND AWARDING PLAINTIFF $400 IN ACTUAL DAMAGES AND $2,000 IN PUNITIVE DAMAGES**

MARGARET A. MAHONEY,
Bankruptcy Judge.

This case is before the Court on the Supplemental Motion for Summary Judg-

## FACTS

The Court will not recite again the facts stated in its earlier order granting partial summary judgment to GE Capital which order was entered on July 12, 2005. The facts stated in that order are incorporated by reference. In that order the court found that the only issue[1] as to which summary judgment could not be awarded to GE was, as alleged in Count III of the complaint, the claim that GE violated the automatic stay by charging postpetition interest at a higher rate than the rate allowed under the note in the postpetition but preconfirmation time frame.[2]

The Court stated:

Han also claims that GE violated the automatic stay by charging a postpetition interest rate that was higher than

---

**1.** The U.S. District Court only referred a specific, limited issue to this Court for consideration. That issue is whether the plaintiff is entitled to any damages for "alleged violations of the automatic stay provisions of 11 U.S.C. § 362(h)." Order of October 28, 2004, ¶ 3, *Jung Bea Han v. GE Capital Small Busi-*

*ness Finance Corporation,* Case 3:04cv127/MCR/EMT.

**2.** Mr. Han had alleged that the higher interest rate was also a violation of the stay postconfirmation, but the Court concluded in the July 12, 2005 order that GE's postconfirmation actions did not violate the stay. All issues dealing with whether the prepetition precon-

the rate allowed under the note. GE locked in Han's interest rate at 12.25% after he defaulted on his loan in June of 2000. However, the note only allowed GE to lock in the rate if Han was in default when the SBA purchased the guaranteed portion of the loan. Although Han was in default in June of 2000, there is no evidence before the Court that the SBA purchased the guaranteed portion of the loan. Furthermore, there is no evidence before the Court of what the Wall Street Journal's published prime rates were on the applicable dates.

Because, as stated above, the preconfirmation direct payments were property of the estate, if GE charged a higher interest rate on the preconfirmation payments than the note authorized, there could have been a violation of the stay, as any amount GE charged over the note authorized amount could be considered an act to obtain possession of property of the estate. *See* 11 U.S.C. § 362(a)(3); *LTV Corp. v. Gulf States Steel, Inc. of Alabama,* 969 F.2d 1050 (D.C.Cir.1992).

GE has now provided evidence that the SBA did not buy the guaranteed portion of the loan at Han's default, or at any time thereafter. Therefore, the interest rate did not lock in at any fixed rate.[3] The interest rate continued to float after Han's default as it did before Han's default. The correct interest rate to be charged on Han's loan after the bankruptcy filing, but before confirmation of his chapter 13 plan, and the incorrect rate, were as follows:

| Dates | Interest Rate Charged as Fixed | Interest Rate as Adjusted | Prime Rate | Rate Charged after Corrected History |
|---|---|---|---|---|
| Oct. 00 | 12.25 | 12.25 | 9.50 | 12.25 |
| Nov. 00 | 12.25 | 12.25 | 9.50 | 12.25 |
| Dec. 00 | 12.25 | 12.25 | 9.50 | 12.25 |
| Jan. 01 | 12.25 | 12.25 | 9.50 | 12.25 |
| Feb. 01 | 12.25 | 11.25 | 8.50 | 11.25 |
| Mar. 01 | 12.25 | 11.25 | 8.50 | 11.25 |
| Apr. 01 | 12.25 | 10.75 | 8.00 | 10.75 |
| May 01 | 12.25 | 10.25 | 7.50 | 10.25 |
| June 01 | 12.25 | 9.75 | 7.00 | 9.75 |
| July 01 | 12.25 | 9.50 | 6.750 | 9.50 |

GE charged a higher interest rate than allowed under its own note with Han in 6 of the 10 months after Han filed bankruptcy but before his chapter 13 plan was confirmed. This higher rate meant GE told Han he had to pay $1,465 per month on the note for the direct payments required under his plan. GE sent Han an accounting that showed his payments posted per the incorrect interest rate schedule.[4] GE corrected the interest rate

firmation actions or the postconfirmation actions of GE were actionable on any other grounds were dealt with by the U.S. District Court in its order of October 28, 2004.

**3.** See footnote 4.

**4.** The Court could not find the incorrect accounting in the exhibits of the plaintiff, but it is clear such an accounting was provided to Han. Han's Exhibit 20 is a letter of John Walter, Liquidation Specialist at GE, dated

problem 6 months after entry of the confirmation order and sent Han an amended payment history that posted the amounts paid according to the correct interest rate schedule.[5] Han paid direct payments to GE as follows:

| | |
|---|---|
| Nov. 00 | $1,290.00 |
| Dec. 00 | $1,290.00 |
| Jan. 01 | $1,290.00 |
| Feb. 01 | $1,290.00 |
| Mar. 01 | $1,290.00 |
| Apr. 01 | $1,290.00 |
| May 01 | $1,465.00 |
| June 01 | $1,465.00 |
| July 01 | $1,465.00 |

During the period from October 2000 to July 2001, Han, under his plan, was also paying $7798.70 in prepetition arrearages owed to GE through the chapter 13 trustee based upon the proof of claim filed by GE that stated that that amount was its prepetition claim. GE stated it was the "accrued interest and various fees (late fees, NSF fees, term fee, access fees)" owed by Han.[6] Han continued to insist that he should get a schedule that showed that his postpetition loan payments to GE were applied to reduce principal as well as pay the interest accruing each month after the filing of the case, as if he were current as of the date he filed bankruptcy. GE did not apply the payments in its own accountings as Han requested. GE applied the

April 8, 2002, to Han's then attorney which stated:

> You are correct in stating that the payment history provided to Mr. Han on October 29, 2001 and the payment history provided to him on December 31, 2001 differed significantly. The reason is very simple. Per the terms of the Note, the interest rate was fixed at 12.25% on the date of default of the loan which was June 6, 2000. Mr. Han requested that GE return the interest rate to a floating rate. Because GE Capital has the authority under current U.S. Small Business Administration guidelines to reduce the interest rate to current levels, we did so.

(The statement about the generosity of GE is disingenuous. The Note did not allow GE to lock in the higher rate.)

payments to interest accrued in prepetition periods. For instance, in GE's schedule, Han's payment on November 7, 2000 was applied to interest accrued through July 4, 2000. Han's December 5, 2000 payment was applied to interest accrued through August 2, 2000. The January and February 2001 payments were also applied to prepetition interest. As stated by John Walter of GE in a letter of January 9, 2002:

> Our payment history sent to you by facsimile on December 31, 2001 is *correct*. The column marked "Act Date" represents the "Actual Date" we received your payment. The column marked "Due Date" represents the "Due Date" that the payment was applied against. The column marked "Int Thru" represents the date through which interest was paid with the payment received.[7]

Han sent, either himself or through attorneys, at least 6–7 letters or faxes to GE asking that his account be corrected to reflect the current interest rate. It took approximately one year for GE to determine that it had incorrectly locked in the interest rate on Han's loan. The Court is convinced that the interest rate would not have been corrected but for Han's persis-

5.  Han's Exhibit 17, letter of GE Capital Small Business Finance Corporation liquidation specialist, John Walter, dated December 31, 2001.

6.  Han's Exhibit 22, letter of GE Capital Small Business Finance Corporation general counsel, Katherine D. Knocke, dated April 17, 2003.

7.  Han's Exhibit 18, letter of John Walter, Liquidation Specialist, GE Capital Small Business Finance Corporation, dated January 9, 2002, to Jung B. Han.

tence. When it was corrected, until GE disclosed the fact that the SBA had never purchased part of the loan, GE never indicated that it had made a mistake. The only evidence shows that GE stated it made the adjustment "[b]ecause GE Capital has the authority under the current U.S. Small Business Administration guidelines to reduce the interest rate to current levels."[8] In fact the converse is true—GE never had the authority to raise the rate in the first place.

### LAW

The Court, in partially granting GE's first motion for summary judgment on July 12, 2005, held, pursuant to *Telfair v. First Union Mortgage Corp. (In re Telfair)*, 216 F.3d 1333 (11th Cir.2000), that the only period in which a violation of the stay could have occurred was the period from October 11, 2000, the date of Han's bankruptcy filing until July 12, 2001 when the Hans amended chapter 13 plan was confirmed. No stay was in effect postconfirmation except as to the money necessary for payments to the chapter 13 trustee ($600 per month for 36 months and $845 per month for 24 months thereafter). In reviewing the evidence submitted by GE and Han, it appeared to the Court that the only possible violation could be if GE's charging of the incorrect interest rate could be construed as an "act to obtain possession of property of the estate." 11 U.S.C. § 362(a)(3). By telling Han he must pay $1,465 per month to stay current with the nontrustee direct payments, the argument would be that GE was attempting to collect money (property of the estate) otherwise available to pay other debts. In further reviewing the evidence for this supplemental summary judgment motion, the Court also concludes that Han is possibly alleging that GE's posting of

payments and accounting were incorrect and a violation of the stay. The accounting did not start interest accruals anew at the bankruptcy filing and treat the arrearage claim separately. Han is possibly alleging that the application of postpetition payments to the prepetition arrearage by GE in its accounting was a violation of the stay. The automatic stay precludes "any act to collect ... or recover a claim against the debtor that arose before the commencement of the [bankruptcy] case." 11 U.S.C. § 362(a)(6).

A motion for summary judgment is controlled by Rule 56 of the Federal Rules of Civil Procedure, which is applicable to bankruptcy proceedings pursuant to Fed. R. Bankr.P. 7056. A court shall grant summary judgment to a party when the movant shows that "there is no genuine issue as to any material facts and ... the moving party is entitled to judgment as a matter of law." Fed.R. Bankr.P. 7056(c). In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court found that a judge's function is not to determine the truth of the matter asserted or weight of the evidence presented, but to determine whether or not the factual disputes raise genuine issues for trial. *Anderson*, 106 S.Ct. at 2510–11. In making this determination, the facts are to be looked upon in the light most favorable to the nonmoving party. *Id.; Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A.

The Court will discuss the issue raised by the Court in its July 12, 2005 order first as that issue has been addressed by both parties in this supplemental summary judgment motion and response. Did GE

---

8. See footnote 4.

violate the automatic stay by calculating the payments due from Han at 12.25% for October 11, 2000 through July 2001 and requiring him to pay $1,465.00 per month to be current on his note when his payments, if the correct interest rate had been charged, would have been a lesser amount?[9] There are three issues to be considered. (1) Did the higher payments required result in Han utilizing property of the estate to make the payments?; (2) Was the miscalculation "willful?"; (3) Did the action of GE result in any damages shown by Han?

### 1.

■■■ Han was required to pay $1,465 each month according to GE to pay a complete direct payment during the pre-confirmation period. The sum of $1,465 was the correct sum for the months of October 2000 through January 2001. Therefore, requiring this sum for those months cannot be a stay violation. Han was only being asked to live up to what he offered to do in his chapter 13 plan. For the months of February and March 2001, from earlier payment records, it appears that the payment should have been about $1,368 per month for an 11.25% interest rate. For April 2001 the payment should have been about $1,317 or so; for May 2001, $1,150 or so; for June 2001, $1,100 or so; for July 2001, $1,050 or so.[10] If Han had paid the $1,465 per month as requested, he would have paid $13,185. However, Han paid less than the amount GE was insisting upon in all but three of the nine postpetition preconfirmation months. Han actually paid $12,135. The payments, if the correct interest rates were used would have been about $11,748. Since Han only

paid $12,135, he paid approximately $387 more than he had to pay to be current with the proper interest rates. Was this sum paid from property of the estate?

Section 1306(a)(2) states that "earnings from services performed by the debtor after the commencement of the case" are property of the estate. *See U.S. Postal Service v. Hudson*, 230 B.R. 542 (W.D.Tenn.1999) (gross wages of debtor were property of the estate). Also, the *Telfair* case held that postpetition earnings of a chapter 13 debtor were not property of the estate postconfirmation because all property including earnings revested in the debtor except funds necessary to make plan payments to the chapter 13 trustee. *Telfair*, 216 F.3d at p. 1340–41. Therefore, conversely, all preconfirmation earnings would be property of the estate.

Therefore, writing to Han and his attorney and telling them that payments of $1,465 per month were due in expectation of receiving that sum were actions taken "to obtain possession of property of the estate or of property from the estate." 11 U.S.C. § 362(a)(3).

### 2.

■■■ The receipt of the additional $387 was "willful" on the part of GE. Pursuant to § 362(h), a "willful" violation of the stay is one in which the creditor knows there is a stay and acts anyway. A "willful violation [of the stay] occurs when the creditor knew that the automatic stay had been invoked and intended the action that violated the stay. *See In re Jove Engineering, Inc.*, 92 F.3d 1539, 1555 (11th Cir. 1996)." *Rutherford v. Auto Cash, Inc. (In*

---

9. The incorrect payment amount was quoted to Han only for the months of February 2001 through July 2001. For October 2000 through January 2001, the floating interest rate was actually 12.25% The interest rate only floated lower in February 2001.

10. The Court derived these amounts from payments Han made in the prepetition period when the same or similar interest rate was in effect. *See*, e.g., Han's Exhibit 17.

re Rutherford), 329 B.R. 886, 898 (Bankr. N.D.Ga.2005); *U.S. v. Fernandez (In re Fernandez)*, 132 B.R. 775 (M.D.Fla.1991). Here, GE knew there was an automatic stay. There has been no allegation that it did not know of the bankruptcy case. GE, acting negligently, recklessly, or intentionally, required payments from Han's assets that were higher than the postpetition debt required. These payments from property of the estate were a result of GE's insistence on the fact that $1,465 was the correct payment.[11] These were actions to "obtain possession of property of the estate" and the court concludes they were violations of the automatic stay.

### 3.

■ Section 362(h) provides that the debtor "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages" when a creditor has violated the stay. 11 U.S.C. § 362(h). Han has the burden of proving that he was harmed by a preponderance of the evidence. *Smith v. GTE North Inc. (In re Smith)*, 170 B.R. 111, 115 (Bankr.N.D.Ohio 1994). Han alleges that he has suffered actual damages, including emotional distress, and that he should be awarded punitive damages.

■ Actual damages are "compensatory damages." They are "real, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed to 'nominal' damages and 'puni-

tive' damages." *McMillian v. F.D.I.C*, 81 F.3d 1041, 1054 (11th Cir.1996) (quoting BLACK'S LAW DICTIONARY (6th Ed.1991)); *Cox v. Billy Pounds Motors, Inc. (In re Cox)*, 214 B.R. 635, 642 (Bankr.N.D.Ala. 1997). Han suffered approximately $387 of actual, out-of-pocket damages that were proved. Han also asserts that he has emotional distress actual damages.

A debtor's emotional distress must be more than fleeting, inconsequential, and medically insignificant to support an award of actual damages pursuant to § 362(h). *Aiello v. Providian Fin. Corp.*, 257 B.R. 245, 250 (N.D.Ill.2000), *aff'd*, 239 F.3d 876 (7th Cir.2001). In the absence of conduct of such an egregious or extreme nature that emotional distress would be expected to occur, a debtor must present some medical or other corroborating evidence showing that she suffered more than fleeting and inconsequential distress.

*In re Hedetneimi*, 297 B.R. 837, 842 (Bankr.M.D.Fla.2003).

■ "The potential for abuse if damages for a purely emotional injury can be awarded in suits to redress violations of the stay is considerable." *Aiello*, 239 F.3d at 881. Han has provided no evidence of damages other than his statement that he suffered emotional distress and the showing that he had to pay approximately $387 above his actual required payments. The excess payment required of Han was not very large. There is no evidence that $387 required Han to forego making other nec-

11. For example, Han's Exhibit 7 is a letter from John Walter, GE Capital Small Business Finance Corporation, dated March 27, 2001, stated "As I have discussed with you previously, the regular monthly payments due outside the bankruptcy plan since you filed chapter 13 bankruptcy on October 11, 2000 are $1,465.00 per month. Post-petition payments were due on November 6, 2000, December 6, 2000, January 6, 2001, February 6, 2001 and March 6, 2001."

Also, Han's Exhibit 9 is the GE Objection to Confirmation which states that "[t]he regular monthly payments outside of the Plan are $1,465.00 per month." The objection was dated March 27, 2001, after the date when the floating rate should have lowered the monthly payment amount.

essary payments. Han was clearly upset because he could not get a properly amortized payment history and GE kept insisting that $1,465 per month was due, but the monetary concern was minimal. If Han had made all of the payments he was required to make under his plan and paid the direct payments as recalculated in December 2001, he would have paid off his loan according to the loan agreement, regardless of how GE accounted for the payments during the chapter 13. Han alleges no public embarrassment from the letters of GE. The annoyance was private in his letters to them and from them. Since Han is representing himself, there are no attorney's fees.

It should also be noted that GE corrected its error in December 2001. Although a correction does not change the fact that the stay was violated, the correction clearly mitigated much of the actual damage that Han might claim.

Therefore, the Court concludes that Han suffered actual damages of about $387. The court will round the number to $400 and award that sum. Han proved that he overpaid this sum by a preponderance of the evidence. He proved no emotional distress damages beyond aggravation.

Punitive damages are permitted for a willful violation of the stay "in appropriate circumstances." 11 U.S.C. § 362(h). Many courts have adopted the standard set forth in the *Wagner v. Ivory (In re Wagner)* case, 74 B.R. 898 (Bankr.E.D.Pa. 1987) to determine when appropriate circumstances exist.

> Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are reserved for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief. To recover

punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so.

*Wagner*, 74 B.R. at 903 (quoting in part *Cochetti v. Desmond*, 572 F.2d 102, 106 (3rd Cir.1978))

The Second Circuit Court of Appeals stated that a punitive damage award required an "additional finding of maliciousness or bad faith on the part of the offending creditor." *In re Chateaugay Corp.*, 920 F.2d 183, 186, n. 1 (2nd Cir.1990). Other cases have required "an arrogant defiance of the federal law demonstrated." *Matter of Mullarkey*, 81 B.R. 280, 284 (Bankr. D.N.J.1987). Bankruptcy cases in this circuit have followed these or similar cases and have not awarded punitive damages without weighty circumstances. *Bishop v. U.S. Bank/Firstar Bank, N.A. (In re Bishop)*, 296 B.R. 890 (Bankr.S.D.Ga.2003); *Flynn v. Int. Rev. Service (In re Flynn)*, 169 B.R. 1007 (Bankr.S.D.Ga.1994).

■ GE's conduct was inappropriate and reckless. It should not have taken 6–7 letters and one year for GE to read the note and determine that the interest rate was to float. The conduct, although not as egregious as that in some cases, lasted too long and required too much persistence on Han's part to correct to not warrant some punitive damage award. The Court found no other case where a clear violation of the stay took as long as it did in this case to correct. GE needs to understand that it must take the questions of each client very seriously. The Court concludes that an award of $2,000 is appropriate.

## B.

■ The second issue which Han's response possibly alleges was the issue of whether the incorrect accounting furnished

to Han constitutes a violation of the stay. Did GE's crediting of the postpetition payments against the prepetition interest in its payment schedule violate the stay?

> [O]ther than possibly in a setoff context, mere internal bookkeeping entries by a creditor, in and of themselves, do not generally produce any effect on a debtor, much less a change or an attempted change in possession of property of the estate. [The creditor] . . . could produce all kinds of paperwork which if communicated to the debtor or a third party would violate the stay, but absent that communication, some overt act, or resulting effect on the debtor, no violation has occurred. *Sims v. Capital One Financial Corp.*, 278 B.R. 457, 471 (Bankr. E.D.Tenn.2002) (citations omitted)

█ In this case, GE did send Han a copy of its payment and amortization records for Han's loan. Although GE credited payments as if no bankruptcy had occurred on the history, GE abided by the confirmed plan of the debtor. While Han was in chapter 13, it charged him no postpetition late fees or other charges. GE added no accruing interest to his note that raised his payments during the case. GE did show his balance owing at any point in time as the amount that would be owed if no bankruptcy had occurred, crediting payments made first to outstanding fees and charges and accrued interest, and then to principal. If Han had made all of his chapter 13 payments over the 5 year life of his plan and had paid his direct payments, the loan would have been current at the conclusion of the plan. Therefore, the accounting itself, in this instance, even though communicated to Han, was not a violation of the stay. The accounting was not an attempt to improperly collect a prepetition debt postpetition. 11 U.S.C. § 362(a)(1). The creditor was abiding by the chapter 13 plan. If all payments were made, GE's internal accounting would have been correct at the conclusion of the chapter 13 case. The provision of the accounting to Han was not an attempt "to obtain possession of property of the estate." The accounting was used to show Han where his account stood, but GE took no actions to obtain funds except as allowed by the plan. Also, when GE realized that the accounting included the incorrect interest rate, it corrected it.

## CONCLUSION

The Court concludes that GE Capital Small Business Finance Corporation's motion for summary judgment as to Count III of the complaint is due to be granted in part and denied in part. The Court concludes that GE Capital Small Business Finance Corporation did not violate the stay in Jung Bea Han's bankruptcy case, except for the postpetition preconfirmation incorrect interest charges from February 2001 through July 2001. Due to that stay violation, Jung Bea Han is entitled to $400 in actual damages and $2,000 in punitive damages pursuant to 11 U.S.C. § 362(h).

IT IS ORDERED that:

1. The supplemental motion for summary judgment as to Count III of GE Capital Small Business Finance Corporation is GRANTED in part and DENIED in part due to the Court concluding that the defendant, GE Capital Small Business Finance Corporation violated the stay by charging Jung Bea Han interest at the incorrect rate for the months of February 2001 through July 2001 and concluding that Jung Bea Han suffered $400 in actual damages and $2,000 in punitive damages pursuant to 11 U.S.C. § 362(h).

2. Jung Bea Han is awarded judgment against the defendant, GE Capital

Small Business Finance Corporation in the amount of $2,400.